UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRITTNEY MARIE SCHWARTZ,

              Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY

              Defendant.
_____

DECISION & ORDER

17-CV-1088P

## PRELIMINARY STATEMENT

        Plaintiff Brittney Marie Schwartz ("Schwartz") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income ("DIB/SSI"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 9).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 15, 17). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

**DISCUSSION**

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity ["RFC"] to perform his past work; and

(5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II. Schwartz's Contentions

Schwartz contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 15-1, 18). She contends that the ALJ's RFC assessment is flawed because it is not supported by any medical opinion of record and instead relies on his own lay interpretation of medical findings. (Docket ## 15-1 at 12-16; 18 at 1-3). The Commissioner counters that substantial record evidence supports the ALJ's finding that Schwartz could perform sedentary work with the additional limitations identified in the RFC. (Docket # 17-1 at 6-9).

## III. Analysis

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider

all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

In his decision, at step two, the ALJ found that Schwartz had the severe impairments of "mild facet arthropathy, lumbar spine, with chronic back pain and radiculopathy." (Tr. 14). At step four, the ALJ concluded that Schwartz had the RFC to perform sedentary work except that:

> she must be able to sit or stand alternatively, at will, provided she is not off task more than 10% of the work period in addition to her regularly scheduled breaks[;] [s]he can frequently reach overhead, bilaterally; and she can frequently climb ramps and stairs[;] [s]he can occasionally stoop and crouch; but she can never kneel, crawl or climb ladders, ropes or scaffolds[;] [s]he must avoid exposure to loud noise, unshielded moving mechanical parts and unprotected heights[;] [s]he is limited to simple, routine, repetitive tasks involving only simple work-related decisions and performed in a work environment that is free of fast-paced production requirements, meaning free of constant activity with work tasks performed sequentially in rapid succession with few if any workplace changes[;] [and she] must be allowed to be off task 10% of the time in a typical 8-hour workday in addition to her regularly scheduled breaks.

(Tr. 17).

In explaining his RFC finding, the ALJ summarized the record evidence, including treatment records. (Tr. 18-20). The ALJ noted that Schwartz had "mid-back and low back pain through the period under consideration with clinical findings of left-sided radiculitis or radiculopathy." (Tr. 18). The ALJ observed that Schwartz's diagnosed back pain was supported by imaging, although he noted that the imaging revealed "only mild facet spurring and mild possible associated neural foraminal and/or central canal narrowing significantly less impressive

5

than expected by the degree of reported symptoms [. . .,] and EMGs have been negative for neuropathy or radiculopathy." (*Id.*). As the ALJ further acknowledged, Schwartz had exhibited "exquisite tenderness" to palpation, limited motion, weakness and sensory loss in the left lower extremity, positive straight leg raising, and "gait abnormality." (*Id.*). She had been treated with various pain medications, including "steadily increasing" doses of Cymbalta, physical therapy, and a TENS unit; surgical intervention had apparently not been considered. (*Id.*). The ALJ noted that Schwartz had worked during much of the relevant period, usually in part-time positions, which she indicated she had left for reasons unrelated to her impairments, and had experienced an improvement in her symptoms in and after January 2015 when she began to take higher doses of pain medication. (*Id.*). As the ALJ acknowledged, however, Schwartz experienced "recurrent symptoms" in March 2016. (*Id.*).

In evaluating Schwartz's credibility, the ALJ found that "there is a reasonable nexus between her medical determinable facet arthropathy and her alleged symptoms such as leg pain and associated functional limitations," but concluded that her day-to-day activities and part-time work history[1] "diminish[ed] the persuasiveness of her subjective complaints." (*Id.*). Specifically, the ALJ stated:

> Considering the evidence as a whole, including opinions and testimony provided, the undersigned finds the claimant has a medically determinable impairment that is severe and could reasonably be expected to cause symptoms she has alleged. However, even giving the claimant the benefit of the doubt, when considering her impairments singly or in combination, the undersigned concludes that the residual functional capacity assessment and limitations set forth in this decision are consistent with a preponderance of the evidence in this record and appropriately accommodate her impairments and symptoms, reflected by exertional, postural, upper extremity, environmental

---

[1] At step one, the ALJ concluded that Schwartz's post-onset work did not constitute substantial gainful activity. (Tr. 14).

>and mental limitations consistent with her pain and associated
>stress in combination with her other impairments of lesser severity.

(Tr. 19-20).

As to the "medical opinion" evidence, the ALJ correctly identified that the record contained no "State agency medical opinions regarding plaintiff's physical function." (Tr. 19). The record contained one letter dated December 29, 2015 from Schwartz's primary care physician addressed to "Whom It May Concern." (*Id.* (citing Ex. 9F at 2)). The letter simply stated that Schwartz "had some medical issues, inc. back and neurological issues that affect her legs, and it is necessary for her to sit for a couple of minutes every hour or two, due to this." (*Id.*). The letter appears to have been intended for an employer because it concludes, "This would be a great benefit for my patient, I greatly appreciate you working with her." (*Id.*).

The ALJ gave the letter opinion "partial weight," noting that the physician "did not support his opinions with actual records of his own treatment or examination of [Schwartz] and his actual knowledge of her impairments is unclear, as her treatment appears to be administered by others in his office." (*Id.* (citing Ex. 9F)). Schwartz does not argue that the ALJ erred in determining to give only partial weight to the letter opinion. Rather, Schwartz argues that in the absence of a competent medical opinion, the ALJ had no basis upon which to make his RFC finding. I agree.

The record in this case demonstrates that Schwartz had suffered from persistent back impairments for which she had received ongoing treatment since at least the alleged onset date in 2013 through the time of the hearing. Her condition was diagnosed based upon objective imaging and clinical findings, and she was treated with increasing doses of pain medication, physical therapy and a TENS unit. The treatment records reflect that she was treated by neurologists, primary care providers, and physical therapists for back pain. (Tr. 50-51, 305-18,

7

355-60, 363-66, 376-77, 379-82, 417-19, 420-27, 430-32, 434-35, 438-44, 448-51, 456-57, 463-65, 468-73, 477-79, 481-83, 485-503, 506-509, 511). Although she worked at several part-time jobs, those positions did not meet the level of substantial gainful activity.

Schwartz's application for benefits and trial testimony reflect that she stated that her back condition caused various functional limitations, including an inability to put her arms overhead and reach, an inability to squat or kneel, an inability to climb stairs other than by crawling on her knees, and difficulty bending down. (Tr. 117, 263-68). She testified at the hearing that she could stand for a maximum of thirty minutes and sit for a maximum of two hours before needing to change positions. (Tr. 120). Her treatment records document complaints of difficulties with walking, bending, squatting, lifting, and with sitting or standing for long periods. (Tr. 420, 426, 431-32, 441-42, 468, 472-73, 499). Indeed, the Commissioner's own disability analyst concluded that she could not perform work that required any overhead lifting with her left arm. (Tr. 145).

Despite Schwartz's claimed functional limitations, the ALJ found that she had the capacity to perform full-time sedentary work notwithstanding her standing and sitting limitations provided she was allowed to stand or sit at will. Although her treating physician sent a letter to someone requesting breaks to sit, it is far from clear to whom that letter was addressed. Since she had a variety of part-time jobs at that time, it is reasonable to conclude that the physician provided the letter to Schwartz's current or prospective part-time employer. (*See* Tr. 107-15). Thus, the letter offers no opinion regarding the ability to perform full-time, even sedentary work, given her "medical issues." Nor does the letter offer any opinion on any other functional limitations caused by her impairments. In addition, the record does not reveal the basis upon which the ALJ rejected Schwartz's claims of reaching, squatting, and stair climbing limitations

8

in concluding that she could frequently reach overhead bilaterally, frequently climb stairs, and occasionally stoop and crouch. No opinion evidence or function-by-function assessment is contained in the record to support the ALJ's findings.

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue*, 2010 WL 4703599, *11 (W.D.N.Y.) (internal quotation omitted), *report and recommendation adopted by*, 2010 WL 4703591 (W.D.N.Y. 2010). Accordingly, although the RFC determination is an issue reserved for the Commissioner, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," as a general rule, the Commissioner "may not make the connection himself." *Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008)). Although under certain circumstances, particularly where the medical evidence shows relatively minor physical impairment, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment," *House v. Astrue*, 2013 WL 422058, *4 (N.D.N.Y. 2013) (internal quotation omitted), I conclude that those circumstances are not present here.

As the ALJ acknowledged, Schwartz has been diagnosed with back impairments and has received ongoing treatment to address those impairments. Although the ALJ reviewed and discussed Schwartz's treatment records, the ALJ did not rely upon any medical source statement or a consultative examiner's report to assist him in translating the treatment notes into an assessment of Schwartz's physical capacity for work-related activities. The one letter

9

opinion, which the ALJ discounted, addressed only standing and sitting limitations, and did so in the probable context of part-time employment. *See, e.g.*, *Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) ("it is not the ALJ's evaluation of [the treating physician's] reports that requires a remand in this case[;] . . . it is the evidentiary deficit left by the ALJ's rejection of his reports – not the decision itself – that is troubling"); *see Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862 at *10 (ALJ's discounting of medical opinions created evidentiary gap in the record requiring remand); *House v. Astrue*, 2013 WL 422058 at *4 (ALJ's proper rejection of treating physician opinion nonetheless necessitated remand because absence of any other medical assessment created evidentiary gap).

In other words, the record before the ALJ lacked any opinion from any medical source assessing Schwartz's physical limitations. Although there were treatment notes in the record, they generally contained bare medical findings and did not address or illuminate how her impairments affected her physical ability to perform work-related functions. The ALJ determined that Schwartz retained the physical RFC to perform sedentary work with certain exceptions, several of which conflict with her claimed limitations (reaching, climbing stairs, stooping and crouching). It is unclear how the ALJ arrived at his RFC because the ALJ's decision does not explain the connection between the evidence of record and the physical limitations assessed in the RFC. Although the ALJ thoroughly summarized the record, he did not articulate how the evidence of record supported his RFC findings.

Contrary to the Commissioner's contention (*see* Docket # 17-1 at 7), the Second Circuit's decision in *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5 (2d Cir. 2017), does not compel or counsel a different conclusion. In that case, the Court explained that where "the record contains sufficient evidence from which an ALJ can assess the claimant's [RFC], . . . a

medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x at 8 (internal quotation and citations omitted). "While in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is clear and contains some useful assessment of the claimant's limitations from a medical source." *Muhammad v. Colvin*, 2017 WL 4837583, *4 (W.D.N.Y. 2017) (internal quotations omitted). In other words, an ALJ "may not interpret raw medical data in functional terms." *Militello v. Comm'r of Soc. Sec.*, 2019 WL 1409711, *3 (W.D.N.Y. 2019) (internal quotations and citations omitted). Where, as here, the record lacks a "useful assessment" of the claimant's limitations, remand is appropriate. *See, e.g.*, *Militello v. Comm'r of Soc. Sec.*, 2019 WL 1409711 at *3-4; *Benman v. Comm's of Soc. Sec.*, 350 F. Supp. 3d 252, 260 (W.D.N.Y. 2018); *Smith v. Comm'r of Soc. Sec.*, 337 F. Supp. 3d 216, 226-27 (W.D.N.Y. 2018); *Kain v. Colvin*, 2017 WL 2059806, *4 (W.D.N.Y. 2017). Moreover, Schwartz's impairments "were not so minimal that the ALJ could permissibly make a common sense judgment as to [her] physical RFC." *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 294 (W.D.N.Y. 2018) (quoting *Johnson v. Berryhill*, 2018 WL 3688313, *4 (W.D.N.Y. 2018)). Here, unlike in *Monroe*, the treatment notes do not provide useful assessments of Schwartz's "ability to perform sustained gainful activity." *See Monroe*, 676 F. App'x at 8.

Under these circumstances, I conclude that the ALJ's physical RFC assessment is not supported by substantial evidence. *See Suide v. Astrue*, 371 F. App'x at 690 ("[w]hen an ALJ denies benefits, she must build an accurate and logical bridge from the evidence to her conclusion, . . . and she is not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record") (internal quotations and citations omitted); *House*, 2013 WL

11

422058 at *4 ("[b]ecause there is no medical source opinion supporting the ALJ's finding that [plaintiff] can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate"); *Dailey v. Astrue*, 2010 WL 4703599 at *11 ("[w]ithout this additional medical evidence[,] [the ALJ], as a layperson, could not bridge the gap between plaintiff's [impairments] and the functional limitations that flow from these impairments"); *Walker v. Astrue*, 2010 WL 2629832, *7 (W.D.N.Y.) (same), *report and recommendation adopted by*, 2010 WL 2629821 (W.D.N.Y. 2010); *Lawton v. Astrue*, 2009 WL 2867905, *16 (N.D.N.Y. 2009) ("[t]he record in this [case] contains no assessment from a treating source quantifying plaintiff's physical capabilities, and thus there is no basis upon which the court can find that substantial evidence supports the ALJ's light work RFC determination"); *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d at 913 ("remand is necessary to obtain a proper medical source opinion to support the ALJ's residual functional capacity finding").

"As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . , to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *See Gross v. Astrue*, 2014 WL 1806779, *18 (W.D.N.Y. 2014) (quoting *Deskin*, 605 F. Supp. 2d at 912). Review of the record here leads me to conclude that remand is appropriate to allow the ALJ to obtain a physical RFC assessment or medical source statement from an acceptable medical source concerning Schwartz's physical capabilities.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 17)** is **DENIED**, and Schwartz's motion for judgment on the pleadings **(Docket # 15)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                             United States Magistrate Judge

Dated: Rochester, New York
         May 3, 2019